UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SANTOS OROZCO VALLE,

          Petitioner,

v.

BRUCE SCOTT ET AL,

          Respondents.

Case No. 2:25-cv-02429-JNW-TLF

Order Granting in Part Petitioner's Writ of Habeas Corpus

## I.    INTRODUCTION

Petitioner Santos Orozco Valle, a native, and citizen of Mexico, is detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1, Petition. He has been detained since on or about May 1, 2025. *Id*. at 2. On November 18, 2025, an immigration judge issued a removal order but granted petitioner's application for withholding of removal to Mexico under the Convention Against Torture. *Id*; Dkt. 9-4, Decision of the Immigration Judge at 11.

On December 2, 2025, petitioner, through counsel, filed a habeas corpus petition under 28 U.S.C. § 2241, alleging a violation of his Fifth Amendment due process rights because he was re-detained without notice or a pre-determination hearing before a neutral decision-maker to assess whether re-detention was justified or whether he

Order Granting in Part Petitioner's Writ of Habeas Corpus - 1

posed a flight risk or danger to the community. Dkt. 1 at 9; Dkt. 10, Petitioner's Traverse at 1-2.[1] Petitioner seeks immediate release from custody.

The Government has filed a return memorandum, arguing petitioner's detention is lawful under 8 U.S.C. § 1225(b). Dkt. 7, Government Response. Petitioner has filed a reply. Dkt. 10. The parties unanimously consented to the jurisdiction of a Magistrate Judge, and the petition was transferred from District Judge Jamal Whitehead to Magistrate Judge Theresa Fricke on December 30, 2025. Dkt. 6, 13, 14.

The Court, having considered the parties' submissions and the governing law, GRANTS federal habeas corpus relief, in part. The Court ORDERS petitioner shall be provided a hearing in which the Government bears the burden of proof, under *Singh v. Holder*, 638 F.3d 1196, 1203-08 (9th Cir. 2011), *abrogated on other grounds in Rodriguez Diaz v. Holder,* 53 F.4th 1189, 1196, 1210-1211 (9th Cir. 2022), to justify immigration re-detention by clear and convincing evidence. The government must provide adequate notice and due process protections similar to hearings under *Morrissey v. Brewer,* 408 U.S. 471 (1972) within 10 days after this Order is filed. *See Vitek v. Jones,* 445 U.S. 480, 491-496 (1980). The hearing shall be conducted by an immigration judge to determine whether release on conditions would be appropriate, or whether detention is warranted.

## II.    BACKGROUND

---

[1] Petitioner originally asserted claims under the Immigration and Nationality Act ("INA") and the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), but no longer seeks relief under those statutes because he has appealed the immigration judge's decision to the Board of Immigration Appeals; the removal order is therefore non-final. Dkt 10, Petitioner's Traverse, at 4. A notice of appeal was filed on December 17, 2025. *Id*. at 3; *see* Dkt. 11, Declaration of Julia C. Hunter ¶ 2. Petitioner's sole remaining claim is that his re-detention violated the Fifth Amendment's Due Process Clause. Dkt. 1, Habeas Corpus Petition at 2, 7-10, Claim 1 at 15-16; Dkt. 10 at 4.

Order Granting in Part Petitioner's Writ of Habeas Corpus 2

Petitioner entered the United States on November 25, 2018 through San Ysidro, seeking political asylum, and was taken into custody pending a credible fear interview. Dkt. 8, Declaration of Deportation Officer Sheldon Benjamin ("Benjamin Decl.") ¶¶ 4-7. On December 23, 2018, the Department of Homeland Security ("DHS") determined petitioner had established a credible fear of persecution. Dkt.1 at 7. DHS initiated removal proceedings by filing a Notice to Appear ("NTA") with the Conroe Immigration Court, charging him removable under 212(a)(7)(A)(i)(I) (8 U.S.C. §§ 1182 (a)(7)(A)(i)(I)). *Id*.; Dkt. 8, Benjamin Decl. ¶ 8. Petitioner appeared without counsel for an initial master calendar hearing before the Conroe Immigration Court on February 14, 2019. Dkt. 1 at 7. The case was continued to March 13, 2019. *Id*.

Before the next hearing, DHS released petitioner from custody on humanitarian parole under 8 U.S.C. § 1182(d)(5)(A). *Id*. Petitioner filed an I-589 Application for Asylum and Withholding of Removal. *Id*.

Petitioner relocated to Washington, and venue was transferred to the Seattle Immigration Court. Dkt. 10 at 7. At a master calendar hearing before the Seattle Immigration Court on February 6, 2020, an individual hearing was set for February 8, 2023; the February 8, 2023 hearing was later cancelled and rescheduled for October 25, 2025. *Id*. Based on his pending asylum application, petitioner was granted employment authorization. *Id.*

Petitioner pled guilty on March 9, 2020, to one count of Negligent Driving in the First Degree, in Renton Municipal Court. Dkt. 11, Declaration of Julia C. Hunter, Dkt. 11-3 at 2-4. On or about December 16, 2020, petitioner was placed on Alternatives to Detention ("ATD"). Dkt. 8, Benjamin Decl. ¶ 17. Petitioner was sentenced in Renton Municipal

Order Granting in Part Petitioner's Writ of Habeas Corpus 3

Court on January 5, 2021. Dkt. 11-3, at 7. After supervision was revoked, on December 16, 2021, the Renton Municipal Court imposed a sentence of 30 days of jail time on the Negligent Driving conviction. Dkt. 11-3, at 12.

Petitioner was charged with, and pled guilty, to the crime of violating a no-contact order. Dkt. 12-1, Docket Sheet, City of Mount Vernon v. Santos Orozco Valle, No. XZ0247045 MTV CN, at 14. On October 13, 2023, the Mount Vernon Municipal Court sentenced him to 364 days, with 354 days suspended. *Id*. On March 12, 2024, the Court stayed imposition of the term of confinement while petitioner pursued his appeal to the Skagit County Municipal Court, which was filed on March 18, 2024. *Id*. at 17-18. During this time, ICE did not arrest or detain petitioner.

On April 1, 2025, petitioner was arrested on a bench warrant from the City of Mount Vernon Municipal Court. *Id*. at 22. On April 22, 2025, the Municipal Court lifted the stay and imposed all aspects of his sentence; then, he served his sentence at the Skagit County Jail. *Id*. at 23. While petitioner was in custody in the Skagit County Jail, ICE Enforcement and Removal Operations ("ERO") Ferndale lodged a Form I-247A detainer with the jail on April 30, 2025. Dkt. 8, Benjamin Decl. ¶ 21. On May 1, 2025, petitioner was released without notice to ERO under Washington's sanctuary laws. Dkt. 9-2, Record of Deportable/Inadmissible Alien at 3.

On April 30, 2025, a Form I-200 Warrant for Arrest of Alien was issued for petitioner. Dkt. 9-1 at 2. It states that an immigration officer "determined that there is probable cause to believe that [petitioner] is removable from the United States" based upon "the pendency of ongoing removal proceedings against the subject; biometric confirmation of the subject's identity and a records check of federal databases that affirmatively

Order Granting in Part Petitioner's Writ of Habeas Corpus 4

indicate, by themselves or in addition to other reliable information, that the subject lacks immigration status or notwithstanding such status is removable under U.S. immigration law; and statements made voluntarily by the subject to an immigration officer and/or other reliable evidence that affirmatively indicate the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." *Id*. The warrant further states that "you are commanded to arrest and take into custody for removal proceedings under the Immigration and Nationality Act, the [petitioner]" and was signed by Immigration Officer Matthew E. Hicks. *Id*.

On or about May 1, 2025, petitioner was detained after DHS launched a coordinated target operation with multiple authorities and apprehended petitioner during a traffic stop. *Id.*; Dkt. 8, Benjamin Decl. ¶ 21. The Certificate of Service states the warrant was served on petitioner in English and Spanish on the same day. Dkt. 9-1 at 2.

On November 18, 2025, an immigration judge denied petitioner's application for asylum but granted withholding of removal under the Convention Against Torture. Dkt. 9-4, Decision of the Immigration Judge at 11; Dkt. 8, Benjamin Decl. ¶ 26. On December 2, 2025, petitioner was served with a third country removal notice to Honduras, however, the respondent asserts that "ERO will not be pursuing removal to Honduras as a third country." Dkt. 8, Benjamin Decl. ¶ 27. ICE asserts it is awaiting guidance for third country removal, and that petitioner is mandatorily detained under INA § 235 (8 U.S.C. § 1225(b)) as an "arriving alien." *Id*. ¶ 29.

### III.    DISCUSSION

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is in "violation of the Constitution or laws or treaties of the

United States[.]" 28 U.S.C. § 2241(c)(3). In this case, petitioner contends that his arrest and detention that occurred on or about May 1, 2025 violated the Due Process Clause of the Fifth Amendment to the United States Constitution. Dkt. 1, Petition at 9-11; see Dkt. 10, Petitioner's Traverse.

**A. Statutory Framework**

The Government contends that petitioner is currently detained under 8 U.S.C. § 1225(b) as an arriving alien subject to mandatory detention. Dkt. 7 at 1. Noncitizens covered by § 1225(b)(1) are subject to an expedited removal process that does not include a hearing before an Immigration Judge or review of the removal order." *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116 (W.D. Wash. 2019) (citing 8 U.S.C. § 1225(b)(1)(A)(i)). But, where a noncitizen "indicates either an intention to apply for asylum ... or a fear of persecution," the inspecting immigration officer must refer that noncitizen for an interview with an asylum officer. 8 U.S.C. § 1225(b)(1)(A)(ii); 8 C.F.R. § 208.30(d). Thereafter, if the asylum officer determines that the noncitizen has a credible fear of persecution, then the noncitizen "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii); *Banda*, 385 F. Supp. 3d at 1112.

Under § 1225(b), "the only opportunity for a noncitizen to be released pending a decision on the asylum application is temporary parole 'for urgent humanitarian reasons or significant public benefit.'" *Banda*, 385 F. Supp. 3d at 1112 (quoting 8 U.S.C. § 1182(d)(5)(A)); *see also* 8 C.F.R. §§ 212.5(b), 235.3.

Even if the statutory terms of § 1225(b) do not require a bond hearing, petitioner's continued detention must comport with due process. *See Boumediene v.*

*Bush*, 553 U.S. 723, 797 (2008) (holding that habeas corpus applies to detainees who were classified as enemy combatants and held at Guantanamo Bay; "few exercises of judicial power are as legitimate or necessary as the responsibility to hear challenges to the authority of the Executive to imprison a person."). "Any argument that ICE acted within its authority has no affect [sic] on a claim contending that detention violates Constitutional Due Process." *Francois v. Wamsely*, No. C25-2122-RSM-GJL, 2025 WL 3063251, at *3 (W.D. Wash. Nov. 3, 2025) (citing *Kumar v. Wamsley*, No. 2:25-CV-01772-JHC-BAT, 2025 WL 2677089, at *2 n.2 (W.D. Wash. Sept. 17, 2025)).

### B. Due Process

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id*. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

Determining whether a particular administrative procedure provides the process constitutionally due "generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an

erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*. at 335; *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1320–21 (W.D. Wash. 2025).

The Ninth Circuit in *Rodriguez Diaz v. Garland* assumed without deciding that the *Mathews* three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206-07 (9th Cir. 2022). And district courts have applied the *Mathews* test in similar circumstances. *See E.A. T.-B.*, 795 F. Supp. 3d at 1320–21, n. 4; *Ramirez Tesara v. Wamsley*, No. 2:25-CV-01723-MJP-TLF, 2025 WL 2637663, at *2-5 (W.D. Wash. Sept. 12, 2025); *Kumar* 2025 WL 2677089, at *2-4.

Both parties discuss the *Mathews* test in their arguments. Dkt. 7 at 11; Dkt. 10 at 6. The Court will consider each *Mathews* factor in turn to determine whether petitioner's arrest and detention comport with constitutional due process requirements.

1) Private Interest

Under the first *Mathews* factor, the Court determines the private interest that will be affected by the official action. Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld,* 542 U.S. 507, 529 (2004). "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (citing *Youngberg v. Romeo*, 457 U.S. 307, 316 (1982)); *see also Zadvyda*s, 533 U.S. at 696 (finding that a non-citizen has a liberty interest "strong enough" to challenge "indefinite and potentially permanent" immigration detention). A

person "may have a protected liberty interest in maintaining his freedom even where that freedom is contrary to law." *Duong v. Kaiser,* __ F. Supp. 3d __, No. 25-cv-07598-JST, 2025 WL 2689266, at *5 (N.D. Cal., Sept. 19, 2025) (citing *Johnson v. Williford,* 682 F.2d 868, 873 (9th Cir. 1982)). Courts have recognized that "individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (collecting cases).

The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner," which requires an analysis of the meaningful time to hold a hearing. *Mathews*, 424 U.S 319 at 333 (quoting *Armstrong*, 380 U.S. at 552). On the facts of this case, the Court must determine whether a pre-deprivation hearing is required, or whether respondents may conduct a hearing after an individual in petitioner's situation is initially arrested and detained by ICE. *See generally, Cnty. of Riverside v. McLaughlin,* 500 U.S. 44, 55-56 (1991) (under the Fourth Amendment, a person arrested without a warrant must be brought before a neutral magistrate within 48 hours of arrest (or less, if the person can prove the probable cause determination was delayed unreasonably)).[2]

If a post-deprivation hearing is the proper due process approach, the Court also needs to determine the reasonable time for a post-deprivation hearing. *See Morrissey v.*

---

[2] The petitioner has not raised a Fourth Amendment issue; the Court therefore is not independently analyzing the arrest and detention under the Fourth Amendment. Yet the liberty interests of a person arrested under an immigration detainer or warrant, analyzed under the Fifth Amendment due process factors of *Matthews*, are similar to the liberty interests recognized in *Gerstein v. Pugh,* 420 U.S. 103 (1975). *See Kakkar v. Chestnut,* 1:25-CV-1627 JLT SAB, 2025 WL 3638298 (E.D. Cal. Dec. 15, 2025) (person recently released from prison would not have the same weighty significant private interest under *Mathews* as a person who had been successfully compliant with conditional release for a lengthy period before re-arrest on immigration matter).

Order Granting in Part Petitioner's Writ of Habeas Corpus 9

*Brewer,* 408 U.S. 471 (1972) (probable cause hearing required after arrest for parole violation, and revocation hearing must take place within a reasonable time); *Pham v. Becerra,* No. 23-CV-01288-CRB, 2023 WL 2744397, at *7 (N.D. Cal. Mar. 31, 2023)(mandating a post-deprivation bond hearing within 5 days after court order); *Perera v. Jennings*, No. 21-CV-04136-BLF, 2021 WL 2400981, at *6 (N.D. Cal. June 11, 2021) (mandating a post-deprivation bond hearing within 7 days after court order)); *Carballo v. Andrews,* No. 1:25-CV-00978-KES-EPG (HC), 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (denying petitioner's request for immediate release and ordering a post-deprivation bond hearing within fourteen days after court order); *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *12 (E.D. Cal. Aug. 28, 2025) (holding that petitioner's ATD records indicated numerous violations and ordering a post-deprivation bond hearing within 10 days of court order).

In an analogous involuntary civil commitment arrest and detention case decided by the United States District Court for the District of Rhode Island, *Donahue v. Rhode Island Dept. of Mental Health,* 632 F. Supp. 1456, 1464 (D. R.I. 1986), the Court considered a due process challenge to Rhode Island's involuntary civil commitment statute that required a post-deprivation hearing within 10 days after a person was arrested for being an alcoholic. The Court in *Donahue* acknowledged the term "meaningful" in the context of being heard at a "meaningful time and in a meaningful matter" is "not susceptible to fine calibration." *Id.* at 1465 (citing *Armstrong*, 380 U.S. at 552); *but see, Miranda v. Garland,* 34 F.4th 338, 359-360 (4th Cir. 2022) (a prisoner that

Order Granting in Part Petitioner's Writ of Habeas Corpus 10

is a U.S. citizen may have stronger individual due process interest than a detainee that is a noncitizen).

Indeed, "[t]he issue ... should not be phrased, nor should it be resolved, in terms of required days, hours, or minutes, but should rather turn on the basis of the interests involved and fundamental fairness. The due process clause does not deal in magic numbers, but fundamental fairness." *French v. Blackburn*, 428 F. Supp. 1351, 1355 (M.D.N.C.1977), aff'd sub nom., 443 U.S. 901 (1979). In deciding the constitutionality of the Rhode Island statute, the Court in *Donahue* first concluded that "[i]t is settled that the hearing which determines the constitutionality of the confinement need not take place before the deprivation occurs." *Id*. at 1463. The court collected and analyzed other cases that have ruled on the issue. *Id*. 1466, 1470. In *Luna v. Van Zandt*, 554 F. Supp. 68, 72 (S.D. Tex. 1982), the court held due process required a probable cause hearing within seventy-two hours of deprivation. In *Logan v. Arafeh*, 346 F. Supp. 1265, 1268-70 (D.Conn.1972) *aff'd* sub nom., *Briggs v. Arafeh*, 411 U.S. 911 (1973), the court upheld a decision allowing for up to forty-five days without a hearing.

Here, petitioner was released from custody on humanitarian parole and remained in the community for nearly six years. During that period, he pursued his asylum application, obtained employment authorization, was married, and supported his minor child. This extended period of lawful presence and reliance on continued liberty substantially strengthens petitioner's private interest.[3] But he was convicted of a local

---

[3] Respondents argue that petitioner is subject to mandatory detention as an arriving alien and that alleged parole violations warranted his re-detention. Dkt. 7 at 10–11. Petitioner does not contest ICE's general authority to detain noncitizens, or their authority to allege that violations have occurred, or the authority to terminate parole based on verified violations; the due process challenge is that there was no notice or opportunity to be heard by a neutral decision maker in the respondents' actions to arrest and re-detain him. Dkt. 10 at 8-9. Because the habeas corpus issue before the Court concerns whether due process

criminal offense – for violating a no-contact order. After sentencing he was committed to custody in jail and was released from jail on the same day as his immigration re-arrest. *See Kakkar v. Chestnut,* No. 1:25-CV-1627 JLT SAB, 2025 WL 3638298, at *6 (E.D. Cal. Dec.15, 2025); *N.A. v. LaRose,* No. 3:25-cv-03028-RBM-DEB, 2025 WL 3512412 (S.D. Cal. Dec. 8, 2025) (distinguishing the liberty interests, and whether due process would require a pre-deprivation hearing, between the person who has been released from prison and spent a long period on post-conviction supervision in the community, as opposed to a person who was just released very recently). Therefore, the first *Mathews* factor weighs in petitioner's favor, but the individual interest is not as strong as it would be for an individual who was released from jail and later successfully followed their conditions of supervision for an extended period.

    2)  Risk of Erroneous Deprivation

The second *Mathews* factor examines both the risk of erroneous deprivation under existing procedures and the probable value of additional safeguards. It is undisputed that there has not been any finding that petitioner was a flight risk or a danger to the community. Dkt. 7; *see* Dkt. 10 at 8. Respondents admit that written notice of the termination of parole "did not explicitly occur here" and that "Petitioner was re-detained on the same day that he was released from jail." Dkt. 7 at 11.

Respondents have not rebutted petitioner's contention that, at the time of arrest, petitioner was not provided with notice or opportunity to respond to the allegations against him prior to, during, or immediately after his arrest on May 1, 2025. Dkt. 10 at 8.

---

was provided at the arrest and re-detention of petitioner, rather than the factual merits of the alleged parole violations, the Court will not address arguments of the parties concerning Mr. Orozco Valle's alleged release violations.

There was no neutral decisionmaker making an assessment of whether petitioner's re-detention was arbitrary; therefore, the Court finds there is a significant risk of erroneous deprivation.

The facts also demonstrate that the probable value of additional or substitute procedural safeguards is high, as it is undeniable that the risk of an erroneous deprivation would decrease if petitioner had received notice of the basis for his re-detention and an opportunity to be heard before a neutral decisionmaker.

Respondents state, "[t]here is no question that Petitioner's criminal conviction demonstrates his inability to follow legal orders." Dkt. 7 at 11. And respondents argue, "petitioner had [an] opportunity to be heard concerning his underlying actions during his criminal proceedings." *Id*.

These arguments are defeated by the Court's reasoning in *Vitek v. Jones,* 445 U.S. 480, 491-496 (1980). In that case, the Court held that a due process hearing similar to the *Morrissey v. Brewer,* 408 U.S. 471 (1972) hearing required for parole revocation, is required before transferring a person who has been imprisoned, after conviction for a criminal offense, to be treated outside the prison setting in a mental hospital for involuntary civil commitment. The Court found that, "prisoners facing involuntary transfer to a mental hospital are threatened with immediate deprivation of liberty interests they are currently enjoying and because of the inherent risk of a mistaken transfer," the procedures required under *Morrissey* were required by due process. Likewise, here the risk of erroneous deprivation is immense, and a hearing with due process was required when petitioner was re-detained, even though he had just been released on the same day from jail after serving a sentence for conviction for

Order Granting in Part Petitioner's Writ of Habeas Corpus 13

a local offense. Risk of erroneous deprivation is high; hearings need to be set at a meaningful time to avoid erroneous detention. See *Gonzalez v. United States,* 975 F.3d 788, 823-826 (applying *Gerstein* in the context of ICE arrests).

Therefore, even if the Government believes it has a lawful basis for detention, that belief "does not eliminate [its] obligation to effectuate the detention in a manner that comports with due process." *E.A. T.-B.*, 795 F. Supp at 1322; *see, e.g., Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5517277, at *2 (N.D. Cal. Sep. 14, 2020) (noting that respondents' argument that petitioner is not entitled by statute or regulation to a pre-arrest hearing does not bear on whether a hearing is required for procedural due process).Thus, the second *Mathews* factor also weighs in petitioner's favor.

    3)  Government's Interest

The third *Mathews* factor evaluates the Government's interest, including the function involved and the fiscal and administrative burdens of additional procedural requirements. Respondents assert that "written notice of termination of parole … did not explicitly occur here," and argue "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." Dkt. 7 at 11. The respondents rely on petitioner's having been in jail for charges under local criminal law as the process that was due.

"The government has an obvious interest 'in protecting the public from dangerous criminal [noncitizens].'" *Rodriguez Diaz,* 53 F.4th at 1208 (quoting *Denmore v. Kim*, 538 U.S. 510, 515). Yet even in the situation when the government conducts a warrantless arrest for criminal charges, an individual is entitled to notice of the criminal charges at

Order Granting in Part Petitioner's Writ of Habeas Corpus 14

an initial appearance within 48 hours of being arrested, and the government must provide a detention or release hearing before the individual is committed for pretrial detention. *See Cnty. of Riverside v. McLaughlin,* 500 U.S. 44, 55-56 (1991); *Gerstein v. Pugh,* 420 U.S. at 112 (a determination of probable cause must be decided by a neutral and detached magistrate as soon as possible after a warrantless arrest); 18 U.S.C. § 3142; *see also, Gonzalez v. United States Immigration and Customs Enforcement,* 975 F.3d at 823-826.

"[T]he government clearly has a strong interest in preventing [noncitizens] from 'remain[ing] in the United States in violation of our law.'" *Rodriguez Diaz*, 53 F.4th at 1208 (quoting *Denmore,* 538 U.S. at 518). "The Supreme Court has instructed that in a Mathews analysis, we 'must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature.'" *Id*. (quoting *Landon v. Plasencia*, 459 U.S. 21, 34 (1982)).

Even though the Government has a strong interest in enforcing immigration laws and ensuring community safety, it has not articulated a compelling interest in re-detaining an individual who was on conditional parole without any notice of alleged violations of conditions of supervision, or any hearing whatsoever.

Providing a hearing before an immigration judge would require the government to bear the administrative costs of due process, but those costs are minimal when weighed against the severe deprivation of liberty at stake. The Government's interest in bypassing basic procedural protections is low. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so *without*

Order Granting in Part Petitioner's Writ of Habeas Corpus 15

*a hearing* is low.") (emphasis added). Although it would require the expenditure of resources to provide petitioner a post-deprivation hearing, held by an immigration judge within a reasonable time after re-detention, and to have the hearing conducted with due process protections under *Singh v. Holder*, 638 F.3d at 1208, to justify immigration re-detention by clear and convincing evidence, and provide adequate notice and due process protections similar to hearings under *Morrissey v. Brewer,* 408 U.S. 471 (1972), those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue.

Because the Government has failed to demonstrate a substantial interest in providing little or no due process protections, the administrative burden of providing a timely hearing is outweighed by the serious risk of erroneous deprivation, and the petitioner has a strong interest in continued liberty on conditional parole, the third *Mathews* factor also weighs in petitioner's favor.

## CONCLUSION

Based on this review of the *Mathews* factors, the Court finds that due process requires that petitioner receive notice and an opportunity to be heard by a neutral immigration judge at a meaningful time. *See Valdez*, 2025 WL 1707737, at *4 ("Once immigration court proceedings are underway, decisions regarding continued release are to be made by the Immigration Judge with the protections of judicial due process."). There are other cases in which district courts have found that a <u>pre-deprivation</u> hearing was the proper remedy for granting the habeas corpus petition.[4] But in those cases, the

---

[4] E.g., *MZH v. Hermosillo*, C 25-2523-KKE, 2025 WL 3718655 (W.D. Wash. Dec. 23, 2025); *Pinci v. Noem,* 792 F. Supp. 3d 1025, 1036 (N.D. Cal. 2025) (noting that petitioner had no criminal record); *Rodriguez Diaz v. Kaiser,* 25-cv-05071-TLT, 2025 WL 3011852, at *10 (N.D. Cal. Sep. 16, 2025).

Order Granting in Part Petitioner's Writ of Habeas Corpus 16

petitioner did not have a recent criminal conviction and sentence; in this case the petitioner was released from jail on the same date as he was re-arrested by ICE, after serving a sentence on a recent criminal conviction, based on a plea of guilty in Mount Vernon Municipal Court, for violating a no-contact order. The Court therefore finds that on these facts, a <u>post-deprivation</u> hearing is appropriate under the balancing of interests for *Mathews* Due Process analysis. The post-deprivation hearing should have been conducted within a reasonable time after May 1, 2025 when petitioner was arrested and detained.

    For these reasons, the COURT GRANTS IN PART petitioner's request for habeas corpus relief for a deprivation of due process. The Court DENIES petitioner's request for immediate release. The Court ORDERS the respondents to provide petitioner a hearing in which the Government bears the burden of proof, under *Singh v. Holder*, to justify immigration re-detention by clear and convincing evidence. The government must provide adequate notice and due process protections similar to hearings under *Morrissey v. Brewer,* within 10 calendar days after this Order is filed. The hearing shall be conducted by an immigration judge to determine whether release on conditions should be granted, or whether detention is warranted. The Court also ORDERS respondents to file with the Court on or before January 21, 2026, a joint status report signed by counsel for both parties, showing that this Order has been followed, and to inform the Court of the results of the hearing. The Court's Order concerning notice of removal, and transfer, of petitioner (Dkt. 5) shall remain in effect until the Court determines, by reviewing the joint status report and any additional information required to implement the habeas corpus relief in this case, that this case should be closed.

Dated this 5th day of January, 2026.

Theresa L. Fricke
United States Magistrate Judge